T.C. Summary Opinion 2001-42


UNITED STATES TAX COURT


ROBERT B. AND BETTY D. HARRIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19681-98S.                       Filed March 27, 2001.


<u>Robert D. Hyde</u>, for petitioners.

<u>Martha J. Weber</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7463 in effect at the time the petition was
filed.[1]  The decision to be entered is not reviewable by any
other court, and this opinion should not be cited as authority.

---

[1]     Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code in effect for the
years at issue.  All Rule references are to the Tax Court Rules
of Practice and Procedure.

Respondent determined deficiencies of $17,170.70, $16,615.35, and $4,476.02 in petitioners' Federal income taxes for 1994, 1995, and 1996, respectively, and accuracy-related penalties under section 6662(a) of $3,434.14, $3,323.07, and $895.20 for those years.

Following concessions by the parties,[2] the issues for decision are: (1) Whether the tax home and principal place of business of Robert B. Harris (petitioner) was Memphis, Tennessee, or Los Angeles, California, during 1994; (2) whether petitioners are entitled to deductions for home office expenses under section 280A for each of the years at issue; (3) whether petitioners are entitled to deductions for Schedule C expenses for 1994, 1995, and 1996 in excess of amounts allowed by respondent; and (4) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for negligence or disregard of rules and regulations for each of the years at issue. The remaining adjustments in the notice of deficiency for the years at issue are computational and will be resolved by the Court's holdings on the aforementioned issues.

---

[2]      In the stipulation of facts, respondent conceded a $26,335.72 unreported income adjustment for 1995.  At trial, respondent conceded petitioners' entitlement to a deduction for meals and entertainment expenses of $112.45 for 1994.  On brief, petitioners conceded that, during 1995 and 1996, petitioner's tax home and principal place of business was Los Angeles, California.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Memphis, Tennessee.

Petitioner has a bachelor of science degree in accounting from East Tennessee State University and, since the mid-1960's, has worked in the field of accounting and tax return preparation. In 1964 or 1965, petitioner was employed by the Internal Revenue Service (IRS) as a revenue agent in Memphis, Tennessee. In the early 1970's, he left the IRS to work as a comptroller for Stax Records (Stax) in Memphis. After about 18 months with Stax, he left that employment and started a business known as Memphis Talent Consultants to provide business, financial, and tax advice to recording artists. During the 1970's and 1980's, petitioner traveled to various cities in the United States, including Nashville, Tennessee, Los Angeles, California, Washington, D.C., and Detroit, Michigan, in an attempt to attract clients for his consulting business. From the early to mid-1980's, petitioner rented an apartment in Nashville where he set up an office in the living and dining room areas. He used the apartment bedrooms as living quarters when he stayed overnight in Nashville. That office was closed during 1986 or 1987.

During the late 1980's and early 1990's, petitioner had various clients in Memphis and Los Angeles for whom he performed

business consulting, tax advice, and return preparation. During these years, petitioner traveled to Los Angeles from Memphis once or twice a year.

During 1993, petitioner decided to resume his activity at Nashville. Petitioner began renting a condominium there in late 1993. Also during 1993, one of his Los Angeles clients, Isabell Records, Inc. d/b/a Bellmark Records (Bellmark), began experiencing financial success with one of its recordings and, thus, had an increasing need for petitioner's services.

Due to the prospect of Bellmark's increasing revenues, the owner of Bellmark, Alexander Bell (Mr. Bell), requested during the latter part of 1993 that petitioner devote his full time to Bellmark matters and that petitioner remain in Los Angeles to be "on call" for Mr. Bell and Bellmark. Mr. Bell believed that Bellmark was on the verge of generating significant revenues (which had not previously been the case), and he wanted petitioner to work full time in setting up an accounting department, structuring business administration policies, and so forth. After discussing the matter with his wife, petitioner Betty D. Harris, petitioner agreed to work for Bellmark full time and live in Los Angeles provided that he would be compensated $100,000 per year for his services, plus expenses. No time limitation was placed on this arrangement; rather, the arrangement between petitioner and Bellmark was to last for an

indefinite period of time.  Mr. Bell anticipated that it would take a minimum of 18 to 24 months to structure accounting and administrative departments and have them running smoothly enough that petitioner's full-time presence and participation would no longer be required.

During 1994, 1995, and 1996, petitioner worked for Bellmark in Los Angeles 287, 281, and 282 days, respectively.  He was paid $97,200 for his Los Angeles work during 1994; however, he did not receive the agreed upon compensation for 1995 or 1996.  Moreover, petitioner was not reimbursed by Bellmark for any expenses incurred in the years at issue.  Nevertheless, petitioner continued to devote the majority of his time to Bellmark in the hopes of eventually receiving such moneys.[3]

On their joint Federal income tax return for 1994, petitioners included a Schedule C, Profit or Loss From Business (Schedule C), in connection with petitioner's financial and tax consultant business.  That Schedule C included the following income and expenses:

---

[3]     The principal reason why petitioner was not compensated and reimbursed was that some of the recordings of Bellmark contained the musical talents of several artists, and each of those artists was entitled to royalties, an element which was apparently not anticipated by Mr. Bell or petitioner and that apparently heavily drained Bellmark's resources.

Income:

|  |  |
|---|---|
| Gross receipts | $105,600.00 |
| Cost of Goods Sold[1] | (30,634.35) |
| Gross income | $ 74,965.65 |

Expenses:

|  |  |
|---|---|
| Advertising | $ 866.90 |
| Car and truck expenses | 3,987.59 |
| Insurance | 1,111.67 |
| Legal & professional | 980.00 |
| Office expense | 446.59 |
| Rent or lease (vehicles) | 1,840.15 |
| Rent or lease (other) | 5,500.00 |
| Repairs & maintenance | 186.82 |
| Supplies | 1,309.94 |
| Travel | 8,413.70 |
| Meals & Entertainment[2] | 515.73 |
| Other expenses[3] | 2,783.77 |
| Total expenses | $27,942.86 |

| Net profit | $47,022.79 |
|---|---|

[1] Includes Los Angeles apartment rental payments and $36 per day claimed as per diem for 344 days away from home.

[2] Fifty percent of $1,031.46 expenses.

[3] Consisted of expenses for equipment, miscellaneous, parking, telephone, and dues & subscriptions.

Petitioners also included Schedules C with their 1995 and 1996 joint Federal income tax returns. For 1995, the Schedule C included:

Income:

| | |
|---|---|
| Gross receipts | $11,700.00 |
| Cost of goods sold | -0- |
| Other income | 67.52 |
| Gross income | $11,767.52 |

Expenses:

| | |
|---|---|
| Advertising | $    115.47 |
| Car and truck expenses | 2,378.90 |
| Insurance | 568.62 |
| Legal & professional | 7,920.00 |
| Office expense | 386.54 |
| Rent or lease (other) | 19,072.62 |
| Supplies | 1,152.79 |
| Travel | 7,533.63 |
| Meals & Entertainment[1] | 4,892.87 |
| Other expenses[2] | 5,724.52 |
| Total expenses | $49,745.96 |

Net loss                         ($37,978.44)

[1] Fifty percent of $9,785.75 expenses.

[2] Consisted of expenses for dues & subscriptions, equipment, lodging, miscellaneous, parking, security, and telephone.

For 1996, petitioners reported the following Schedule C income and expenses:

Income:

| | |
|---|---|
| Gross receipts | $4,289.00 |
| Cost of Goods Sold | -0- |
| Other income | -0- |
| Gross income | $4,289.00 |

Expenses:

| | |
|---|---|
| Car and truck expenses | $ 2,224.23 |
| Insurance | 613.73 |
| Legal & professional | 468.54 |
| Office expense | 125.10 |
| Rent or lease (other) | 6,595.00 |
| Supplies | 441.11 |
| Travel | 4,044.61 |
| Meals & Entertainment[1] | 2,453.16 |
| Utilities | 665.19 |
| Other expenses[2] | 2,106.53 |
| Total expenses | $19,737.20 |

Net loss                    ($15,448.20)

[1] Fifty percent of $4,906.31 expenses.

[2] Consisted of expenses for dues & publications, lodging, miscellaneous, parking, security, shipping & postage, and telephone.

In the notice of deficiency, respondent made the following adjustments to petitioners' income and expenses for each of the years at issue:

| Adjustments | 1994 | 1995 | 1996 |
|---|---|---|---|
| Schedule C exp. | [1]$55,766.06 | [2]$38,722.93 | [3]$19,737.20 |
| Unreported income | -0- | 26,335.72 | -0- |
| One-half SE tax | (101.63) | (1,913.18) | (303.01) |
| Total adjustments | $55,664.43 | $63,145.47 | $19,434.19 |

[1] In the explanation of items, the disallowed deductions totaled $55,766.96; however, in the statement of income tax changes the adjustment to income was $55,766.06. The record does not contain an explanation for this 90-cent discrepancy. For 1994, $2,810.25 of the deductions claimed on Schedule C were allowed and the $55,766.06 total adjustments shown above for 1994 include $30,634.35 claimed by petitioner for Los Angeles expenses that he listed on Schedule C as cost of goods sold.

[2] For 1995, the total Schedule C expenses was $49,745.96.
Respondent allowed $11,023.03 and disallowed $38,722.93.

[3] For 1996, respondent disallowed all the deductions claimed
on Schedule C.

As a result of these adjustments, respondent determined that
petitioners were liable for additional self-employment taxes and
the accuracy-related penalty under section 6662(a) for each of
the years in question.

In the stipulation of facts, respondent conceded an
unreported income adjustment of $26,335.72 for 1995.  At trial,
respondent conceded that petitioners were entitled to Schedule C
deductions for meals and entertainment expenses (prior to the 50-
percent limitation) totaling $112.45 for 1994.  On brief,
petitioners conceded that, during 1995 and 1996, petitioner's
principal place of business or tax home was Los Angeles,
California.

The first issue is whether the tax home or principal place
of business of petitioner was Memphis, Tennessee, or Los Angeles,
California, during 1994.[4]  Petitioners contend the tax home

[4]     Since petitioners conceded that petitioner's tax home
for 1995 and 1996 was Los Angeles, petitioners are not entitled
to the claimed deductions for away from home expenses relating to
petitioner's employment in Los Angeles for those years.  This
would include, for 1995, $13,240.00 apartment rental expenses and
an $8,400 per diem amount for meals (prior to the 50-percent
limitation), as well as approximately $863.80 of travel expenses
for car rental and air travel between Los Angeles and Memphis
(continued...)

during 1994 was Memphis and, thus, expenses incurred in Los Angeles are deductible. Conversely, respondent contends that petitioner's tax home during 1994 was Los Angeles and, as such, petitioners are not entitled to deduct expenses incurred in Los Angeles that year.

For 1994, petitioners reported $18,250.55 for petitioner's Los Angeles apartment rent and $12,384 as per diem expense for meals away from home, which they subtracted from gross receipts as cost of goods sold on Schedule C of their 1994 return. Additionally, petitioners deducted the following expenses in connection with petitioner's Los Angeles activities: (1) $146.94 of their total car and truck expenses; (2) $1,840.15 of their total rent or lease for car rental expenses; (3) $786.35 of their total travel expenses, which represented dry cleaning in Los Angeles and airline tickets between Memphis and Los Angeles; and (4) $646.07 of their total meals and entertainment expenses (prior to the 50-percent limitation). During 1994, petitioner was in Los Angeles 287 days.[5]

---

[4](...continued)
(petitioners failed to satisfy the strict substantiation requirements of sec. 274(d) with respect to travel expenses between Los Angeles and Memphis, particularly the business purpose for such travel; see infra) and, for 1996, $4,600 for meals (prior to the 50-percent limitation), $501.34 for car and truck expenses, and $292.21 of travel expenses for car rental.

[5]It is notable that petitioner was also in Los Angeles 281
(continued...)

Deductions are a matter of legislative grace. See New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioners bear the burden of proving that petitioner's tax home was not in Los Angeles during 1994. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Daly v. Commissioner, 72 T.C. 190, 197 (1979), affd. 662 F.2d 253 (4th Cir. 1981). The cost of goods purchased for resale in a taxpayer's business is an offset to gross receipts in computing gross income. See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987). Petitioner's purported travel expenses are not cost of goods sold but are expenses that would reduce petitioner's income, if at all, as a deduction pursuant to section 162. Thus we shall discuss the cost of goods sold and deductions together.

A taxpayer ordinarily may not deduct a personal expense. See sec. 262. Section 162(a), however, allows a taxpayer to deduct traveling expenses incurred while away from home. A taxpayer may deduct a traveling expense under section 162(a)(2) if the following three conditions are satisfied: (1) The expense must be reasonable (e.g., lodging, transportation, fares, and food); (2) it must be incurred while away from home; and (3) it must be an ordinary and necessary expense incurred in the pursuit of a trade or business. See Commissioner v. Flowers, 326 U.S.

---

[5](...continued)
and 282 days during 1995 and 1996, respectively.

465, 470 (1946). The rationale in allowing such a deduction is to alleviate the burden falling upon a taxpayer whose business requires that he or she incur duplicate living expenses. See Tucker v. Commissioner, 55 T.C. 783, 786 (1971); Kroll v. Commissioner, 49 T.C. 557, 562 (1968). Whether the taxpayer satisfies the three recited conditions is purely a question of fact. See Commissioner v. Flowers, supra at 470; see also Wills v. Commissioner, 411 F.2d 537, 540 (9th Cir. 1969), affg. 48 T.C. 308 (1967).

For purposes of section 162(a)(2), generally a taxpayer's tax home is the vicinity of his principal place of business rather than the location of his personal residence. See Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Kroll v. Commissioner, supra at 561-562. However, an exception to this general rule exists where a taxpayer's employment in another area is temporary as opposed to indefinite. See Peurifoy v. Commissioner, 358 U.S. 59 (1958); Horton v. Commissioner, 86 T.C. 589, 593 (1986). A taxpayer's tax home is his or her personal residence if the employment at a different location is temporary; i.e., the taxpayer's presence at the other location is considered to be away from home, and the taxpayer may deduct the expenses associated with traveling to and living at a temporary job site. See Kroll v. Commissioner, supra at 562. A taxpayer's tax home is the location of his or her employment if the employment is

indefinite or permanent; i.e., the taxpayer's presence at a second location is not considered away from home. See id.

A place of business is a temporary place of business if the employment is such that termination within a short period of time can be foreseen. See Albert v. Commissioner, 13 T.C. 129, 131 (1949). Conversely, employment is categorized as indefinite, substantial, or indeterminate if its termination cannot be foreseen within a fixed or reasonably short period of time. See Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F.2d. 1216 (6th Cir. 1971). Employment which is temporary may become indefinite due to changed circumstances or the passage of time. See Norwood v. Commissioner, 66 T.C. 467, 470 (1976). When that occurs, the location of the taxpayer's employment becomes his or her tax home. See Kroll v. Commissioner, supra at 562. Whether a taxpayer's employment is temporary or indefinite is a question of fact. See Peurifoy v. Commissioner, supra at 61; cf. Harvey v. Commissioner, 283 F.2d 491 (9th Cir. 1960), revg. 32 T.C. 1368 (1959). However, a "taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year." Sec. 162(a).

Petitioners contend that, even though petitioner's employment in Los Angeles eventually lasted several years, it was temporary during 1994 because, at that time, it could not have reasonably been foreseen, nor was it intended by the parties,

that petitioner would work in Los Angeles for more than 1 year. The record of this case, however, proves otherwise. Mr. Bell, who testified at trial, anticipated, in late 1993, that petitioner's full-time services in Los Angeles would be required for at least 18 to 24 months in order to develop a "Rolls Royce accounting department" for Bellmark. Moreover, both petitioner and Mr. Bell agreed that the compensation arrangement of $100,000 per year plus living expenses was an open-ended arrangement on which no time limitation was placed.

The Court is satisfied that it was certainly foreseeable, in late 1993, that petitioner's full-time services in Los Angeles would be required beyond a period of 1 year. Additionally, petitioner's full-time services in Los Angeles did exceed or extend beyond 1 year. On this record, the Court holds that petitioner's employment in Los Angeles during 1994 was indefinite and not temporary.

Since petitioner conducted business activities in both Los Angeles and Memphis during 1994, the Court deems it prudent to also examine whether petitioner's principal place of business during 1994 was Los Angeles or Memphis. In the event that a taxpayer possesses two places of business or employment separated by considerable distances, his choice of one as his tax home carries little weight. Instead, courts often apply an objective test in which they consider: (1) The length of time spent at each

location; (2) the degree of activity in each place; and (3) the relative proportion of taxpayer's income derived from each place. See Markey v. Commissioner, 490 F.2d 1249, 1255 (6th Cir. 1974), revg. T.C. Memo. 1972-154; Montgomery v. Commissioner, 64 T.C. 175, 180 (1975), affd. 532 F.2d 1088 (6th Cir. 1976); Sherman v. Commissioner, 16 T.C. 332 (1951); Sargent v. Commissioner, T.C. Memo. 1984-390. Although no single factor is dispositive, particular emphasis sometimes is placed on the amount of time spent by a taxpayer at a given location. See Markey v. Commissioner, supra at 1252. In general, a taxpayer is required to establish his tax home at his major duty post so as to minimize the amount of business travel away from home that must be undertaken. See Wills v. Commissioner, 411 F.2d 537, 540 (9th Cir. 1969), affg. 48 T.C. 308 (1967).

Petitioner spent 287 days in Los Angeles during 1994 but only 25 days in Memphis. Petitioner's degree of activity in connection with Bellmark in Los Angeles during 1994 far exceeded the degree of any other activity conducted by petitioner during that year, including any Memphis activity. Petitioner's nearly full-time efforts during 1994 were devoted to Bellmark in Los Angeles. Finally, petitioner earned $97,200 from his Los Angeles activity for 1994 but only $4,000 from his Memphis activity in that year. Thus, the Court finds that petitioner's principal place of business during 1994 was Los Angeles.

On this record, the Court holds that petitioner's tax home during 1994 was Los Angeles. Petitioners are not entitled to deduct the Los Angeles living expenses of petitioner or expenses for travel between Los Angeles and Memphis during that year.[6] Respondent is sustained on this issue.

The second issue is whether petitioners are entitled to deductions for home office expenses under section 280A for each of the years at issue. For 1994, 1995, and 1996, petitioners claimed various expenses on Schedule C that petitioners contend were in conjunction with an office petitioner maintained in their personal residence at Memphis. The claimed expenses were:

| Expense | 1994[1] | 1995[2] | 1996[3] |
|---|---|---|---|
| Insurance | $1,111.67 | -- | $613.73 |
| Telephone | 756.48 | -- | 676.55 |
| Security | -- | $1,040 | 137.50 |
| Utilities | -- | -- | 665.19 |

[1] Petitioners deducted 1/3 of their total homeowner's insurance and 73 percent of their total telephone expenses.

---

[6] To the extent that the per diem amount deducted by petitioners for 1994 ($36 x 344 days = $12,384) exceeded the number of days petitioner was in Los Angeles (344 - 287 = 57 days) and would thus be attributable to other cities, petitioners failed to produce evidence that would satisfy the strict substantiation requirements of sec. 274(d) with respect to these expenses. Additionally, with respect to travel expenses between Los Angeles and Memphis, petitioners failed to produce evidence to satisfy the strict substantiation requirements of sec. 274(d), particularly in connection with the business purpose for such travel. See discussion infra.

[2] Petitioners deducted 50 percent of their total home-security expenses.

[3] Petitioners deducted 25 percent of their total homeowner's insurance, 50 percent of their total telephone expenses, 50 percent of their total home-security expenses, and 50 percent of their total utilities.

Petitioners contend that petitioner maintained office space in three separate areas of their personal residence for the purpose of conducting a tax return preparation business. A room directly adjacent to the front entry hall of petitioners' home was a waiting room, and a smaller room directly adjacent thereto, adjacent to the kitchen and eating area, was an office. Additionally, a room adjacent to the guest bedroom and bathroom was a computer and files room. Other than the described rooms, petitioners' home consisted of a garage, utility room, kitchen/eating area, family room, master bedroom, master bathroom, guest bedroom, and guest bathroom.

Under section 162(a), a taxpayer is permitted to deduct all ordinary and necessary expenses paid or incurred in carrying on a trade or business. Under section 280A(c)(1)(A), however, deductions associated with a home office are generally disallowed unless the home office is used exclusively and regularly as the principal place of business of the taxpayer. Respondent contends that the residence areas claimed by petitioners as a home office for petitioner's tax return preparation business were not used

exclusively or regularly for such activity, nor did these areas constitute petitioner's principal place of business.

Where a taxpayer's business is conducted in part in the taxpayer's residence and in part at another location, the following two primary factors are considered in determining whether the home office qualifies under section 280A(c)(1)(A) as the taxpayer's principal place of business: (1) The relative importance of the functions or activities performed at each business location, and (2) the amount of time spent at each location. See Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993).

Whether the functions or activities performed at the home are necessary to the business is relevant but not controlling. The location at which goods and services are delivered to customers generally will be regarded as an important indicator of the principal place of the taxpayer's business and is given great weight in most cases. See id. at 175, 176. The relative importance of business activities engaged in at the home may be substantially outweighed by business activities engaged in at another location. The Supreme Court has stated:

> If the nature of the business requires that its services are rendered or its goods are delivered at a facility with unique or special characteristics, this is a further and weighty consideration in finding that it is the delivery point or facility, not the taxpayer's residence, where the most important functions of the business are undertaken.

Id. at 176.

One of petitioners' Memphis neighbors, Jerrel Walker (Mr. Walker), testified that petitioner prepared his tax returns during each of the years at issue.  Mr. Walker contacted petitioner, both at his Memphis residence and in Los Angeles, during the years at issue.  Mr. Walker verified that the room in petitioners' home claimed as an office contained a desk and file cabinets, and the waiting room had a dining room table.  Also, Mr. Walker and petitioners were personal friends, and he visited petitioners' home on social occasions.

A business contact of petitioner's, David Porter (Mr. Porter), testified that petitioner had prepared his tax returns for many years and that he had visited petitioners' Memphis residence for such purposes.  However, Mr. Porter had business meetings with petitioner at locations outside of petitioners' home, including, but not limited to, Los Angeles and the Memphis International Airport during the years at issue.  Mr. Porter frequently contacted petitioner by telephone in both Los Angeles and Nashville.

In a tax return preparation business, the most important function is the delivery of the completed return to the taxpayer for signature and filing.  No matter how much preparatory work is performed, none is of any value unless the completed return is

delivered to the taxpayer, who then executes and files the same. See <u>Strohmaier v. Commissioner</u>, 113 T.C. 106, 112-113 (1999). The delivery of a completed return is the service for which petitioner would ultimately have been paid.  However, no evidence was produced to show where, or in what manner, petitioner delivered completed tax returns to his clients.

However, it is clear from the record that petitioner spent the substantial majority of his time, during each of the years at issue, conducting his tax return preparation business at locations other than Memphis, Tennessee, primarily at Los Angeles.  Thus, most of petitioner's business activities were performed outside of his claimed home office at Memphis.

On this record, the Court finds that the areas of petitioners' Memphis residence that they claim constituted a home office were not used exclusively and regularly in petitioner's tax return preparation business during 1994, 1995, or 1996. Moreover, the Court finds that petitioners' home was not petitioner's principal place of business during any of the years at issue.  Consequently, respondent is sustained on the disallowance of the home office expenses claimed by petitioners for 1994, 1995, and 1996.[7]

---

[7]    For 1994 and 1996, portions of the claimed telephone expenses consisted of monthly payments to Cellular One of Memphis for a mobile phone.  All checks to Cellular One were signed by
(continued...)

The third issue is whether petitioners are entitled to deductions for other Schedule C expenses, for 1994, 1995, and 1996, in excess of amounts allowed by respondent. The remaining Schedule C expenses for each of the years at issue mainly constitute expenses in connection with petitioner's business activities at Memphis and Nashville, Tennessee, as well as certain other various business expenses. The amounts disallowed by respondent are as follows:

| Expense | 1994 | 1995 | 1996 |
|---|---|---|---|
| Car & truck | $3,840.61 | -- | $1,722.89 |
| Legal & prof. | 980.00 | $2,920.00 | 468.54 |
| Office | -- | -- | 125.10 |
| Rent or lease | 5,500.00 | 5,832.62 | 6,595.00 |
| Supplies | -- | -- | 441.11 |
| Travel | 7,627.35 | 6,669.83 | 3,752.40 |
| Meals & ent.[1] | 385.39 | 1,385.75 | 306.31 |
| Other | [2]2,027.29 | [3]3,263.81 | [4]1,292.48 |

[1] Prior to the 50-percent limitation.

[2] Consists of $751.35 for equipment, $147.39 for miscellaneous, $358.55 for parking, and $770.00 for dues & publications.

[3] Consists of $1,965.39 for lodging and $1,298.42 for miscellaneous.

[4] Consists of $35.32 for dues & publications, $814.14 for lodging, $90.65 for miscellaneous, $190.40 for parking, and $161.97 for shipping & postage.

[7](...continued)
petitioner wife and were written on petitioners' joint checking account. Petitioners produced no evidence to show that this cellular phone was used in connection with any business activity of petitioner.

As noted earlier, to qualify for deduction, an expense must be both ordinary and necessary within the meaning of section 162(a).  See Deputy v. duPont, 308 U.S. 488, 495 (1940).  Whether an amount claimed constitutes an ordinary and necessary business expense is a question of fact to be determined from the evidence presented with the burden being on the taxpayer.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Allen v. Commissioner, T.C. Memo. 1988-166.

Additionally, a taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions.  Sec. 6001.  Under certain circumstances, where a taxpayer establishes entitlement to a deduction but does not establish the amount of the deduction, the Court is permitted to estimate an allowable amount.  See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).  However, there must be sufficient evidence in the record to permit the Court to conclude that a deductible expense was incurred for at least the amount allowed.  See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).  In estimating the amount allowable, the Court bears heavily against the taxpayer whose inexactitude is of his or her own making.  See Cohan v. Commissioner, supra at 544.

However, in the case of travel expenses, specifically including meals and lodging while away from home, as well as in

the case of entertainment expenses and expenses with respect to "listed property", section 274(d) overrides the so-called Cohan doctrine.  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) imposes stringent substantiation requirements for deductions related to travel, entertainment, gifts, and "listed property (as defined in section 280F(d)(4))".  Passenger automobiles are listed property under section 280F(d)(4)(i). Section 274(d) denies these deductions unless:

> the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift. * * *

Thus, under section 274(d), deductions for automobile expenses, travel expenses, and meals and entertainment expenses may not be estimated.  Instead the taxpayer must provide adequate records or corroborate testimony with other evidence.

Of the Schedule C expenses at issue, the following are subject to the strict substantiation requirements of section 274(d):

| Expense | 1994 | 1995 | 1996 |
|---|---|---|---|
| Car & truck | $3,840.61 | -- | $1,722.89 |
| Travel | 7,627.35 | $6,669.83 | 3,752.40 |
| Meals & ent. | 385.39 | 1,385.75 | 306.31 |
| Other: | | | |
|     Parking | 358.55 | -- | 190.40 |
|     Lodging | -- | 1,965.39 | 814.14 |

In support of these expenses, petitioners produced various receipts and statements purporting to show the actual expenditures.  However, petitioners failed to produce credible evidence, if any evidence at all, as to the business purpose of each expense.  Moreover, petitioners failed to introduce evidence establishing the business relationship to petitioner with any persons purportedly being entertained or using the facilities or property rented by petitioner.

Petitioners' evidence with respect to these expenses does not satisfy the stringent substantiation requirements of section 274(d).  Moreover, as noted earlier, the Court cannot allow or estimate an allowable deduction for any of these expenses under the Cohan rule.  Thus, the Court holds that petitioners are not entitled to deduct any of the claimed expenses for the years at issue in excess of what was allowed by respondent.[8]

---

[8] As stated previously, respondent conceded that petitioners are entitled to deductions for meals and entertainment expenses (prior to the 50-percent limitation) totaling $112.45 for 1994.  This amount will be taken into
(continued...)

The following claimed Schedule C expenses are not subject to the substantiation requirements of section 274(d) but are, nevertheless, deductible only if they are ordinary and necessary under section 162(a) and not personal expenses under section 262:

| Expense | 1994 | 1995 | 1996 |
|---------|------|------|------|
| Legal & prof. | $ 980.00 | $2,920.00 | $ 468.54 |
| Office | -- | -- | 125.10 |
| Rent or lease | 5,500.00 | 5,832.62 | 6,595.00 |
| Supplies | -- | -- | 441.11 |
| Other: | | | |
|     Equipment | 751.35 | -- | -- |
|     Misc. | 147.39 | 1,298.42 | 90.65 |
|     Dues/sub. | 770.00 | -- | 35.32 |
|     Shipping | -- | -- | 161.97 |

For 1994, petitioners deducted legal and professional expenses of $980.  Petitioners submitted copies of canceled checks dated January 28, 1994, to Pamela Shell in the amount of $180 and February 22, 1994, to Raymond A. Harris in the amount of $800. Both checks were signed by petitioner; however, neither check listed in the memo section the reason or purpose for the payment. No evidence was presented to show the relationship of the payees to petitioner's business activities, or to show that the payments were incurred in carrying on petitioner's trade or business. Thus, the Court holds that these expenses have not been substantiated under section 162(a) and are not deductible.

---

[8](...continued)
account in a Rule 155 computation.

For 1995, petitioners deducted legal and professional expenses of $7,920, of which respondent allowed $5,000. The remaining $2,920 amount was disallowed in the notice of deficiency. In support of the deductibility of this $2,920, petitioners produced canceled checks showing the following payments:

| Date | Payee | Amount |
|------|-------|--------|
| 01/13/95 | Susan Javellana | $  500 |
| 01/23/95 | Betty Crutcher | 500 |
| 01/23/95 | Jim Costa | 70 |
| 07/28/95 | Tanya L. Lynch | 400 |
| 07/28/95 | Antonio Cristi | 100 |
| 07/28/95 | Tanya Oliver | 100 |
| 07/28/95 | Vanessa M. Taylor | 550 |
| 12/15/95 | Titi Oconnor | 700 |
| Total | | $2,920 |

All of these checks were signed by petitioner; however, none listed a notation in the memo section as to the purpose or reason for payment, nor whether the payees were attorneys. Moreover, no evidence was presented to show the relationship of most of these payees to petitioner's business activities. Finally, no evidence was presented that would indicate these payments were incurred in petitioner's trade or business. Thus, the Court holds that these expenses are not deductible.

For 1996, petitioners deducted $468.54 in legal and professional expenses, all of which was disallowed by respondent.

In support of the deductibility of this amount, petitioners produced canceled checks showing the following payments:

| Date | Payee | Amount |
|------|-------|--------|
| 01/25/96 | Ron Lawson | $ 250.00 |
| 02/14/96 | Seymour Rosenberg | 100.00 |
| 04/13/96 | AAA Auto Club South | 59.00 |
| 11/09/96 | Sam's Club | 59.54 |
| Total | | $ 468.54 |

The check to Ron Lawson was signed by petitioner; however, the others were signed by petitioner wife and were written on petitioners' joint account. The check to Ron Lawson listed no notation in the memo section. The checks to Sam's Club and AAA Auto Club South, respectively, listed 9-digit and 11-digit numbers in the memo section which appear to be account numbers. The check to Seymour Rosenberg has a notation of "Business Advice" in the memo section. No evidence was presented to show the relationship of Ron Lawson or Seymour Rosenberg to petitioner's business activities. Moreover, no evidence was presented that would indicate any of these payments was incurred in petitioner's trade or business. The Court holds that these expenses are not deductible.

The remaining rent or lease expenses at issue, i.e., $5,500 for 1994, $5,832.62 for 1995, and $6,595 for 1996, constitute amounts paid by petitioner for rental property in Nashville, Tennessee. Throughout the years at issue, petitioner rented a

condominium at 403 South Timber Drive in Nashville.  Petitioner
began renting this condominium during the latter part of 1993.
Petitioner contends he used this condominium as an office during
the years at issue, even though he was in Nashville only 30 days,
37 days, and 44 days, respectively, for the years 1994, 1995, and
1996.  Petitioner contends he maintained this office as a point
of contact in Nashville for potential clients.  The condominium
was located in a residential area of Nashville.  Petitioner
claims that he set up the downstairs portion of the condominium
as an office and kept an air mattress upstairs where he slept
when he stayed overnight in Nashville.  There was a telephone and
answering machine but no fax machine or copy machine in the
condominium.  Petitioner contended that no one lived in the
condominium when he was not in Nashville.

Petitioner testified that a woman named Debra Push (Ms.
Push), who petitioner identified as a songwriter, would
occasionally check the mail and answering machine for petitioner
when he was not in Nashville.  Ms. Push was not compensated
monetarily for this service.  The Court notes, however, that
petitioner incurred additional lodging expenses in Nashville
during the years at issue at Embassy Suites, Crowne Plaza,
Wyndham Garden Hotels, and similar establishments.[9]  Petitioner
testified that the reason for incurring these additional lodging

---

[9]     Sometimes these expenses were $100 or more per night.

expenses was that his condominium wasn't "up to snuff" to the point that he was comfortable meeting there with new clients or other clients he wanted to impress.

Ms. Toya Turney (Ms. Turney) of the Nashville Electric Service (NES), who was called by respondent, testified, based on the records of NES, that Ms. Push had electrical power activated in her name at 403 South Timber Drive on November 23, 1992. The records of NES further reflected that, up until the trial date of this case on October 26, 1999, Ms. Push's utility account at 403 South Timber Drive remained active. Finally, Ms. Turney testified that the NES electricity usage records for 403 South Timber Drive indicated that someone was living at that location during each of the years at issue. This testimony contradicts petitioner's testimony that he used this property only 30 to 40 days per year.

On this record, the Court finds that the amounts expended by petitioner, during 1994, 1995, and 1996, for the rental of a condominium at 403 South Timber Drive in Nashville were not ordinary and necessary expenses incurred in the conduct of petitioner's trade or business. Thus, the Court holds these expenses are not deductible by petitioners.

For 1994, petitioners deducted other expenses of $751.35 for equipment, $147.39 for miscellaneous, and $770 for dues and subscriptions. The equipment expenses consisted of several

amounts paid to unidentified recipients for unidentified merchandise or services, $6.15 paid to a pharmacy for unidentified merchandise, $10.81 paid to an unidentified recipient for reading glasses, $109.91 to Costco Wholesale for "Oscar",[10] sheets, pillows, a rug, and some kitchen supplies, and $609.94 to Costco for unidentified merchandise. The miscellaneous expenses included $60 paid to this Court for "A. Johnson - Filing Fee", $20 to the City of Los Angeles for an undisclosed purpose, a $4 automatic teller machine withdrawal, $28 for a one-way Greyhound bus ticket for petitioner wife from Nashville to Memphis, and $5.42 to the U.S. Postal Service.[11]

Petitioners failed to prove that any of these expenses were ordinary and necessary expenses incurred in the conduct of a trade or business of petitioner. Moreover, with respect to the $770 for dues and subscriptions, petitioners produced no evidence to show that this amount was actually expended. Thus, the Court holds that petitioners are not entitled to deduct any of these expenses.

---

[10] The Court surmises that this was some type of "Oscar De La Renta" merchandise, which would indicate that it was either housewares such as sheets or towels, clothing or fashion accessories, jewelry, perfume, or a similar item that would be personal in nature.

[11] No documentary proof was submitted to show that any of the remaining claimed amount was actually expended.

For 1995, petitioners deducted other miscellaneous expenses of $1,298.42. These expenses consisted mainly of a $1,000 payment to Bellmark for an undisclosed purpose, as well as payments by petitioner wife to the U.S. Postal Service, a $39 payment to Avis,[12] $5 for a frequent flyer guide, a $15 credit card late fee, $20 for a Federal Express package from Al Bell, and a $111.88 credit card charge for Farm Gusher in Tijuana, Mexico (totaling $1,190.88). None of these expenses was established as an ordinary and necessary expense incurred in the conduct of a trade or business; consequently, petitioners are not entitled to deduct these expenses.

For 1996, petitioners deducted office expenses of $125.10, supplies expenses of $441.11, miscellaneous expenses of $90.65, $35.32 for dues and publications, and $161.97 for shipping and postage. The claimed office expenses consisted mostly of several amounts paid to unidentified recipients for unidentified merchandise or services, four rolls of film purchased from a Kroger grocery store, a watch battery, plastic tape, a padlock, and other merchandise purchased from a Staples office supply store. The claimed supplies expenses consist of amounts paid to Sam's Club for unidentified merchandise.

---

[12]   The notation "Bellmark" was listed in the memo section of this canceled check.

The only evidence presented with respect to miscellaneous expenses of $90.65 consisted of $32 paid to the U.S. Postal Service and $27.05 to Seessel's grocery store in Memphis.[13]  Both checks were signed by petitioner wife and were written on petitioners' joint checking account.  The check to Seessel's contained a notation in the memo section that the purchase was for flowers.  The dues and publications expense consisted of $35.32 paid to Rodale Books.  The shipping and postage expenses consisted of numerous payments to the Postal Service and Mail Boxes, Etc., for various mailing and shipping charges as well as for postage stamps.  At least one shipping charge was from petitioner to petitioners' daughter.

The evidence is insufficient to show that any of these expenses were ordinary and necessary expenses incurred in the conduct of a trade or business, and, therefore, these expenses are not deductible.

On this record, the Court holds that petitioners are not entitled to Schedule C deductions for 1994, 1995, and 1996 in

---

[13]    Nothing further was submitted with respect to the remaining amount claimed.

excess of the amounts allowed by respondent.[14]  Respondent is
sustained on this issue.

The final issue is whether petitioners are liable for the
accuracy-related penalty under section 6662(a) for negligence or
disregard of rules or regulations for each of the years at issue.
Section 6662(a) provides that, if it is applicable to any portion
of an underpayment in taxes, there shall be added to the tax an
amount equal to 20 percent of the portion of the underpayment to
which section 6662 applies.  Section 6662(b)(1) provides that
section 6662 shall apply to any underpayment attributable to
negligence or disregard of rules or regulations.

Section 6662(c) provides that the term "negligence" includes
any failure to make a reasonable attempt to comply with the
provisions of the internal revenue laws, and the term "disregard"
includes any careless, reckless, or intentional disregard of
rules or regulations.  Negligence is the lack of due care or
failure to do what a reasonable and ordinarily prudent person
would do under the circumstances.  See Neely v. Commissioner, 85

---

[14]     Some of the claimed deductions were for expenses of
Bellmark.  Petitioners are not entitled to deduct such expenses.
Both petitioner and Mr. Bell testified that petitioner was to be
reimbursed by Bellmark for all expenses incurred by him, during
the years at issue, on behalf of Bellmark.  It is well
established that a trade or business deduction is not allowable
to the extent that an employee is entitled to reimbursement from
his employer.  See Orvis v Commissioner, 788 F.2d 1406, 1408 (9th
Cir. 1986), affg. T.C. Memo. 1984-533; Lucas v. Commissioner, 79
T.C. 1, 7 (1982).

T.C. 934, 947 (1985). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs.

However, under section 6664(c), no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances of each particular case. See sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and reliance on the advice of a professional, such as an accountant. See Drummond v. Commissioner, T.C. Memo. 1997-71. However, the most important factor is the extent of the taxpayer's effort to determine the taxpayer's proper tax liability. See sec. 1.6664-4(b)(1), Income Tax Regs. An honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith. See Remy v. Commissioner, T.C. Memo. 1997-72.

For all 3 years, the underpayments resulted from respondent's disallowance of petitioners' Schedule C deductions

and, additionally, in 1995, from respondent's determination of unreported income.

Respondent conceded that petitioners are entitled to deductions for meals and entertainment expenses totaling $112.45 for 1994 and that petitioners did not have unreported income for 1995. Petitioners conceded that, during 1995 and 1996, petitioner's tax home was Los Angeles, and, thus, petitioners were not entitled to deduct Los Angeles living expenses for those years. The remainder of respondent's adjustments at issue for 1994, 1995, and 1996 have been sustained.

Petitioners' evidence was far short of what was required to sustain the disputed adjustments in the notice of deficiency for 1994, 1995, and 1996. Furthermore, petitioners presented no evidence to show that they used due care in claiming deductions on their returns for 1994, 1995, and 1996 that were subsequently adjusted in the notice of deficiency and either conceded by petitioners or sustained by this Court in favor of respondent, nor did petitioners present evidence to show that they had reasonable cause to claim such deductions.

Petitioner failed to maintain adequate books and records to reflect his business expenses for any of the relevant years. Petitioner was an experienced tax return preparer who was, or should have been, abundantly familiar with the substantiation requirements of section 274(d) and the necessity of maintaining

sufficient books and records to accurately reflect his income and expenses.  Moreover, petitioner should certainly have been aware of the controlling factors in determining a taxpayer's tax home and of the stringent requirements surrounding a home office deduction under section 280A.  If petitioner had not been familiar with these rules and requirements, his many years of experience in preparing returns should have led him to research the law on these matters before filing returns claiming such deductions.

The Court finds that petitioners made an insufficient effort to determine their proper tax liabilities in filing their returns for 1994, 1995, and 1996.  Moreover, in light of petitioner's experience, knowledge, and education, the Court finds that petitioners' claiming deductions, which were disallowed by respondent and subsequently conceded by petitioners or sustained by this Court in favor of respondent, did not constitute a reasonable and honest misunderstanding of fact or law.

On this record, the Court holds that petitioners negligently or intentionally disregarded rules or regulations with regard to the adjustments in the notice of deficiency for 1994, 1995, and 1996 that were either conceded by petitioners or sustained by this Court in favor of respondent.  Accordingly, the imposition of the accuracy-related penalties under section 6662(a) for 1994, 1995, and 1996 is sustained.

Finally, to the extent the Court has failed to address any argument of petitioners herein, the Court concludes such argument is without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>under Rule 155.</u>